UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Eric K. S.[1],

                              Plaintiff,

v.                                                    CASE # 19-cv-01407

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                OF COUNSEL:

Law Offices of Kenneth Hiller              KENNETH R. HILLER, ESQ.
  Counsel for Plaintiff                    MARY ELLEN GILL, ESQ.
6000 North Bailey Ave
Suite 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                FRANCIS D. TANKARD, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   JOLETTA MARIE FRIESEN, ESQ.
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative

_____

[1] In accordance with Standing Order in November 2020, to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.      RELEVANT BACKGROUND

### A.      Factual Background

Plaintiff was born on March 17, 1983 and has less than a high school education. (Tr. 741, 781). Generally, plaintiff alleged disability due to manic depression, bipolar, anxiety, arthritis, a broken toe, fractured hand, and multiple concussions. (Tr. 782). His alleged onset date of disability is July 19, 2013. (Tr. 176). His date last insured was March 31, 2016. (*Id.*).

### B.      Procedural History

On March 29, 2016, plaintiff applied for a period of Disability Insurance Benefits (SSD) under Title II of the Social Security Act and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. (Tr. 51, 687-700). Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge (ALJ). On September 10, 2018, plaintiff appeared before the ALJ, Anthony Dziepak. (Tr. 75-101). On October 1, 2018, ALJ Dziepak issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 48-74). On August 21, 2019, the Appeals Council (AC) denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-7). Thereafter, plaintiff timely sought judicial review in this Court.

### C.      The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1.  The claimant met the insured status requirements of the Social Security Act through March 31, 2016.

2. The claimant has not engaged in substantial gainful activity since July 19, 2013, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.,* 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: polysubstance addiction disorder, currently in remission; affective disorder; anxiety related disorder; spine disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

5. After careful consideration of the entire record, I find that, based on all of the impairments, including the substance use disorders, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: he can lift or carry up to 20 pounds occasionally, 10 pounds frequently; he can sit for up to 6 hours in an 8-hour workday; stand and walk for up to 6 hours in an 8-hour workday; he is limited to simple, repetitive work tasks, in a non-assembly line, production paced setting; no work with the public; occasional interaction with supervisors and coworkers; no team or tandem collaborative type work with coworkers; he can make simple, work-related decisions and adapt to simple changes in a routine setting; he is expected to miss more than 1 day per month, consistently and indefinitely; he is expected to be late or depart early from work more than 2 days per month; he will be off task more than 10% of the workday, in addition to normal breaks (more than 6 minutes an hour); he will need at least 1 additional, daily unscheduled 15-minute break; even after initial training, he will require daily supervisor visits to provide individualized attention provide focus or redirection to return to work tasks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 17, 1983 and was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorders, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

12. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

13. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except:

he can lift or carry up to 20 pounds occasionally, 10 pounds frequently; he can sit for up to 6 hours in an 8-hour workday; stand and walk for up to 6 hours in an 8-hour workday; he is limited to simple, repetitive work tasks, in a non-assembly line, production paced setting; no work with the public; occasional interaction with supervisors and coworkers; no team or tandem collaborative type work with coworkers; he can make simple, work-related decisions and adapt to simple changes in a routine setting.

14. If the claimant stopped the substance use, the claimant would be unable to perform past relevant work (20 CFR 404.1565 and 416.965).

15. As indicated above, transferability of job skills is not material to the determination of disability because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

16. If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566. 416.960(c), and 416.966).

17. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(g), 404.1535, 416.920(g) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

(Tr. 48-66).

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff essentially makes two arguments in support of his motion for judgment on the pleadings. First, plaintiff argues the ALJ failed to develop the record with functional opinion evidence from an examining or treating source. Second, the ALJ erred in failing to advise the *pro se* plaintiff of the importance of obtaining functional opinion evidence from his treating medical sources. (Dkt. No. 11 at 1 [Pl.'s Mem. of Law]).

### B.   Defendant's Arguments

Defendant responded to each of plaintiff's arguments. First, defendant asserts the ALJ properly considered the medical and other evidence in the record in assessing plaintiff's RFC. (Dkt. No. 15 at 17 [Def.'s Mem. of Law]). Second, the record was sufficient for the ALJ to reach

a conclusion and there was no gap or additional duty to advise a *pro se* claimant to obtain more evidence. (Dkt. No. 15 at 23-24).

## III.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an

analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.      Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.      ANALYSIS

Plaintiff argues the ALJ failed to develop the record with functional opinion evidence from an examining or treating source. However, the record contained opinion evidence, significant

treatment records, and plaintiff's testimony. The ALJ was not required to further develop the record by seeking additional medical records or where the evidence already in the record was "adequate for [the ALJ] to make a determination as to disability." *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996).

The record did contain an opinion from state agency psychological medical consultant Dr. Bowman. (Tr. 560-565). On April 28, 2016, Dr. Bowman reviewed plaintiff's medical records and completed a mental residual functional capacity assessment. (Tr. 560-65). Dr. Bowman provided a lengthy discussion of plaintiff's mental health and addiction treatment. (Tr. 564). Based on his summary, Dr. Bowman stated that plaintiff was clearly abusing substances and there was no evidence of record to suggest that plaintiff's psychiatric conditions cause more than moderate limitation independent of substance abuse. (Tr. 565). Thus, he concluded that plaintiff, independent of his substance abuse, was moderately limited in activities of daily living; in maintaining social functioning; and in maintaining concentration, persistence, or pace. (Tr. 560). State agency consultants are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation and the ALJ accordingly gave significant weight to the opinion of Dr. Bowman. *See* 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(I)[2].

Contrary to plaintiff's argument, although Dr. Bowman's opinion was prior to the period of improvement from sobriety and medication compliance it was still substantial evidence which the ALJ reasonably relied on. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("[B]ecause state agency review precedes ALJ review, there is always some time lapse

---

[2] Evaluation of the medical opinions in this case is governed by 20 C.F.R. §§ 404.1527(c), 416.927(c), not the newer and far different regulation that applies for claims made after March 27, 2017, which is located at 20 C.F.R. §§ 404.1520c, 416.920c.

between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it."). The ALJ discussed the subsequent evidence, including treatment and continued mental health symptoms, and identified it as supportive of Dr. Bowman's finding that plaintiff was not disabled when he was not abusing substances. (Tr. 62). Accordingly, the ALJ found that plaintiff's presentation in late 2017 and into 2018 showed that he achieved more stable sobriety and improved symptoms combined with a new medication in 2018. (Tr. 62). However, the ALJ also noted that it was still clear from plaintiff's treatment records that he had significant underlying symptoms related to anxiety and affective disorders, particularly regarding his ability to interact appropriately with others. (Tr. 62). Thus, the ALJ properly considered the opinion of Dr. Bowman in according it great weight, and the subsequent evidence that showed, absent substance abuse, plaintiff was not disabled (Tr. 62). *See Christina v. Colvin*, 594 F. App'x 32, 33 (2d Cir. 2015) ("State agency medical and psychological consultants…are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluations."); *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State Agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record.").

In addition to Dr. Bowman's opinion, there was also an opinion from state agency consultant Dr. Tezeto from a previous application that the mental impairments were non-severe in the absence of substance abuse. (Tr. 894). The ALJ gave this April 2012 opinion partial weight and stated he gave Dr. Bowman's more recent assessment more weight because it was more consistent with the evidence in the record. (Tr. 63). A medical opinion need not be rejected or ignored solely because it predates the relevant time period, particularly where the record otherwise

contains limited information regarding the claimant's functional capabilities. *Thomas v. Comm'r of Soc. Sec.*, No. 1:18-CV-00839(JJM), 2020 WL 548394, at \*3 (W.D.N.Y. Feb. 4, 2020) quoting *Pugh v. Comm'r of Soc*. Sec., 351 F. Supp. 3d 305, 315 (W.D.N.Y. 2018).

The administrative record also contained treatment records and opinions from Dr. Shehata. On December 8, 2014, Dr. Shehata completed a mental health report for the New York State Education Department wherein he noted that plaintiff was not currently using drugs or alcohol but stated the was in substance abuse treatment. (Tr. 1857-1858). Plaintiff's history of drug use included opiates and heroin and the longest period of abstinence had been 11 months. (Tr. 1858). Dr. Shehata indicated that plaintiff had difficulty problem solving and making decisions; showed poor interpersonal skills/judgment; displayed poor judgment/decision making skills; and showed poor frustration tolerance and social judgment/interpersonal skills even with support from service providers, peers, and family. (Tr. 1857). Dr. Shehata thought plaintiff would need a low stress work environment with limited social interaction. (Tr. 1857-1858). On January 12, 2015, Dr. Shehata completed another mental health report for the Niagara County Department of Social Services. (Tr. 1856). Under functional limitations, he determined that plaintiff could work part-time to which the ALJ accorded partial weight. (Tr. 1856). Plaintiff claims error because the opinion did not use functional terms. (Dkt. No. 11 at 15). The ALJ however appropriately accounted for the low stress environment with limited social interaction and plaintiff has not argued the evidence indicates greater limitations. *See Bartell v. Comm'r of Soc. Sec.,* 5:13–CV– 843, 2014 WL 4966149, at \*3 (N.D.N.Y. Sept. 30, 2014) (holding the ALJ adequately factored in limitations in maintaining concentration, persistence and pace and difficulties dealing with stress by limiting plaintiff to simple unskilled work).

The ALJ further identified assessments in September 2016 from treating source Dr. Capote, February 2018 from treating psychiatrist Dr. Park, and March 2018 from a counselor which state plaintiff could not work but qualified those assessments because each included plaintiff's substance abuse disorder. (Tr. 63, 1853-1855). The ALJ noted the assessments were consistent with the record when plaintiff was actively abusing substances, but in the absence of substance use, the ALJ concluded the evidence was more consistent with the opinions of Drs. Shehata and Bowman. (Tr. 63). Plaintiff asserts the ALJ should have accepted the most recent treatment opinion from Dr. Park that he could not work at all. (Dkt. No. 11 at 17). It is well-settled that a treating physician's conclusion that a claimant cannot work is entitled to no deference "because a finding of disability is one reserved for the Commissioner." 20 C.F.R. § 404.1527(d) (an opinion on the ultimate issue of disability is not a medical opinion, and is not entitled to any "special significance"); *Trepanier v. Comm'r of Soc. Sec. Admin*., 752 F. App'x 75, 77 (2d Cir. 2018) (*citing Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Further, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).

Plaintiff also contends the ALJ erred by failing to advise the *pro se* plaintiff of the importance of obtaining functional opinion evidence from his treating medical sources. (Dkt. No. 11 at 14). To be sure, an ALJ's duty to develop the record is heightened when a claimant is proceeding *pro se*. *Burnham v. Berryhill*, 2017 WL 3301398, *2 (W.D.N.Y. Aug. 2, 2017). However, as discussed above, the ALJ in this case satisfied his duty to develop the record and there was no further duty to advise the plaintiff to obtain a functional evaluation. There were no allegations or evidence of an intellectual disability which differentiates this case from those

authorities cited by plaintiff in support of his argument. (Dkt. No. 11 at 16). The plaintiff was represented by an attorney at the time of his request for a hearing until a month prior to the first hearing date. (Tr. 601, 643). The first hearing date consisted of a lengthy discussion between the ALJ and plaintiff about representation, evidence, and grounds for appeal before plaintiff ultimately decided to opt for a postponement for the opportunity to obtain new representation. (Tr. 102-120). Plaintiff was unable to find representation and chose to go forward with his second hearing *pro se*. (Tr. 77-80).

In sum, there was no gap in the record preventing the ALJ from making a decision. *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996); *see also Rosa v. Callahan*, 168 F.3d 72, 29 n. 5 (2d Cir. 1999) ("Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."). Here, the ALJ had medical opinions on plaintiff's mental limitations as well as objective medical evidence and plaintiff's own testimony. (Tr. 60-65). The ALJ acted within his discretion when he afforded different degrees of weight to the opinions regarding plaintiff's mental limitations and medical evidence in the record and the RFC did not need to perfectly correspond with an opinion. *See Matta v. Astru*, 508 F. App'x at 56 (2d Cir. 2013).

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is

    **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is

    **<u>GRANTED</u>**.

Dated: March 4, 2021                     _J. Gregory Wehrman_
Rochester, New York                       HON. J. Gregory Wehrman
                                          United States Magistrate Judge